**ANTONIA M. APPS**
**REGIONAL DIRECTOR**
**Tejal D. Shah**
**Wendy B. Tepperman**
**Sushila Rao Pentapati**
**Eric C. Kirsch**
**Benjamin S. Mishkin**
**Attorneys for Plaintiff**
**SECURITIES AND EXCHANGE COMMISSION**
**New York Regional Office**
**100 Pearl Street**
**Suite 20-100**
**New York, NY 10004-2616**
**(212) 336-0410 (Rao Pentapati)**
**pentapatisu@sec.gov**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br><br>          **Plaintiff,**<br><br>    **-against-**<br><br>**JUSTIN D. SMITH and**<br>**JOSHUA CONSTANTIN,**<br><br>          **Defendants.** | **COMPLAINT**<br><br>**24 Civ. 6004**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Securities and Exchange Commission ("SEC"), for its Complaint against

Defendants Justin D. Smith ("Smith") and Joshua Constantin ("Constantin") (together,

"Defendants"), alleges as follows:

## SUMMARY

1.     From 2017 to 2023 (the "Relevant Period"), Defendants fabricated more than $75

million in assets, forged documents, and repeatedly lied to raise money for their company,

Healthcare Solutions (defined below), as part of a scheme to defraud investors out of millions of

dollars and to perpetuate their fraud while operating Healthcare Solutions, for part of the Relevant Period, as a publicly traded company.

2.      Beginning in at least November 2017, Defendants solicited investor funds for Healthcare Solutions Holdings, Inc. ("HSH") with plans to take HSH public.  In April 2021, Defendants then took HSH public pursuant to a reverse merger with a publicly traded shell company.  In connection with the merger, the publicly traded shell was renamed Healthcare Solutions Management Group, Inc. ("HSMG," and together with HSH, "Healthcare Solutions" or the "Company").

3.      Throughout the Relevant Period, Defendants engaged in an elaborate scheme to falsely inflate Healthcare Solutions' assets by more than $75 million.

4.      First, in November 2017, Defendants fabricated a fictitious investment in Healthcare Solutions of more than $75 million by an entity controlled by Smith, named Landes Trust (defined below) (the "Landes Investment").

5.      Then, from approximately November 2017 to September 2020, Defendants used this fictitious Landes Investment to raise at least $2.7 million in private offerings of Healthcare Solutions stock based on private placement memoranda and other documents that falsely claimed the Company had more than $75 million in assets.

6.      Relatedly, part of Healthcare Solutions' initial business plan was to partner with physicians to provide "ancillary services," such as laboratory services, and to raise investor capital from physicians and others.  However, federal laws restricted ancillary service providers and referring physicians from having financial relationships.  Healthcare Solutions' offering documents highlighted the Company's purported satisfaction of a legal exemption applicable to ancillary service providers that were publicly traded companies and maintained at least $75 million in stockholders' equity (the "$75 Million Minimum").  But contrary to Defendants' representations, Healthcare

Solutions fell far short of the $75 Million Minimum because Defendants had fabricated the Landes Investment.

7.     Constantin participated in drafting offering documents containing these false representations and providing them to prospective investors, while Healthcare Solutions' Board of Directors—chaired by Smith—approved them.

8.     After Healthcare Solutions became public in April 2021, Defendants made or contributed to similar materially false and misleading statements about the Landes Investment, the Company's finances, and Healthcare Solutions' purported satisfaction of the $75 Million Minimum.

9.     To perpetuate and conceal their fraud, Defendants forged and disseminated documents purporting to corroborate the Landes Investment, including fake and photoshopped bank and client account statements.  Defendants also lied to Healthcare Solutions' auditors, gave them fake supporting documents, and falsified books and records to effectuate and cover up their scheme.

10.    Finally, Defendants signed Company SEC filings containing misleading statements relating to their backgrounds.  While touting their qualifications to lead the Company, Defendants concealed that they were previously subjects of enforcement actions by securities regulators.  In 2013, the United States District Court for the Southern District of New York entered a final judgment against Constantin on securities fraud claims brought by the SEC in an action captioned *SEC v. Constantin, et al.*, No. 11 Civ. 4642 (S.D.N.Y.), which permanently enjoined Constantin from violating the anti-fraud provisions of the federal securities laws and found him liable for millions of dollars in financial remedies.  The SEC also permanently barred Constantin from participating in any penny stock offering in 2013—a prohibition which Constantin then violated by, among other things, soliciting investors in Healthcare Solutions' private placements, negotiating and coordinating the Company's reverse merger transaction, and working with the Company's transfer agent to issue

stock certificates.  For Smith's part, in 2020, the Ohio state securities regulator issued a cease-and-desist order against Smith and two Smith-controlled entities that also used the "Landes" name for acting as unlicensed securities dealers, salespersons, and investment advisers.  Defendants disclosed none of the foregoing regulatory history while misleadingly boasting in Company SEC filings of their relevant experience and qualifications.

11.    As a result of Defendants' fraud, investors suffered significant financial losses.  By late 2022, Healthcare Solutions' business had largely collapsed.  In April 2023, the Company's stock price plummeted to almost zero and never recovered, rendering investors' shares effectively worthless.  The Company currently has no operations or material assets.

12.    All the while, Defendants compensated themselves handsomely from Healthcare Solutions' coffers, each pocketing, directly or through entities they controlled, at least hundreds of thousands of dollars.

## VIOLATIONS

13.    By virtue of the foregoing conduct and as alleged further herein, Smith has (i) violated, and/or, in the alternative, aided and abetted violations by Constantin and Healthcare Solutions of, Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)], Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder; (ii) violated Exchange Act Section 13(b)(5) [15 U.S.C. § 78m(b)(5)] and Rules 13b2-1, 13b2-2, and 15d-14 [17 C.F.R. §§ 240.13b2-1, 240.13b2-2, and 240.15d-14] thereunder; and (iii) aided and abetted HSMG's violations of Exchange Act Sections 13(b)(2)(A) and 15(d) [15 U.S.C. §§ 78m(b)(2)(A) and 78o(d)] and Rules 12b-20, 15d-1, 15d-11, and 15d-13 [17 C.F.R. §§ 240.12b-20, 240.15d-1, 240.15d-11, and 240.15d-13] thereunder.

14.    By virtue of the foregoing conduct and as alleged further herein, Constantin has (i) violated, and/or, in the alternative, aided and abetted violations by Smith and Healthcare

Solutions of, Securities Act Section 17(a) [15 U.S.C. § 77q(a)], Exchange Act Section 10(b) [15 U.S.C. § 78j(b)], and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder; (ii) violated Exchange Act Sections 13(b)(5) and 15(b)(6)(B)(i) [15 U.S.C. §§ 78m(b)(5) and 78o(b)(6)(B)(i)] and Rule 13b2-1 [17 C.F.R. § 240.13b2-1] thereunder; and (iii) aided and abetted violations by Smith of Exchange Act Rule 13b2-2 [17 C.F.R. § 240.13b2-2] and by HSMG of Exchange Act Sections 13(b)(2)(A) and 15(d) [15 U.S.C. §§ 78m(b)(2)(A) and 78o(d)] and Rules 12b-20, 15d-1, 15d-11, and 15d-13 [17 C.F.R. §§ 240.12b-20, 240.15d-1, 240.15d-11, and 240.15d-13] thereunder.

15.    Unless Defendants are restrained and enjoined, they will engage in the acts, practices, transactions, and courses of business set forth in this Complaint or in acts, practices, transactions, and courses of business of similar type and object.

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

16.    The SEC brings this action pursuant to the authority conferred upon it by Securities Act Sections 20(b) and 20(d) [15 U.S.C. §§ 77t(b) and 77t(d)] and Exchange Act Section 21(d) [15 U.S.C. § 78u(d)].

17.    The SEC seeks a final judgment: (a) ordering permanent injunctive relief against Defendants; (b) ordering Defendants to disgorge all ill-gotten gains they received as a result of the violations alleged herein and to pay prejudgment interest thereon, pursuant to Exchange Act Sections 21(d)(3), 21(d)(5), and 21(d)(7) [15 U.S.C. §§ 78u(d)(3), 78u(d)(5), and 78u(d)(7)]; (c) ordering Defendants to each pay civil money penalties pursuant to Securities Act Section 20(d) [15 U.S.C. § 77t(d)] and Exchange Act Section 21(d)(3) [15 U.S.C. § 78u(d)(3)]; (d) permanently prohibiting Defendants from serving as an officer or director of any company that has a class of securities registered under Exchange Act Section 12 [15 U.S.C. § 78l] or that is required to file reports under Exchange Act Section 15(d) [15 U.S.C. § 78o(d)], pursuant to Securities Act Section 20(e) [15 U.S.C. § 77t(e)] and Exchange Act Section 21(d)(2) [15 U.S.C. § 78u(d)(2)]; (e) permanently

prohibiting Smith from participating in any offering of a penny stock, pursuant to Securities Act

Section 20(g) [15 U.S.C. § 77t(g)] and Exchange Act Section 21(d)(6) [15 U.S.C. § 78u(d)(6)];

(f) permanently prohibiting Defendants from participating, directly or indirectly, in the issuance,

purchase, offer, or sale of any security; and (g) ordering any other and further relief the Court may

deem just and proper.

## JURISDICTION AND VENUE

18.    This Court has jurisdiction over this action pursuant to Securities Act Section 22(a)

[15 U.S.C. § 77v(a)] and Exchange Act Section 27 [15 U.S.C. § 78aa].

19.    Defendants, directly and indirectly, have made use of the means or instrumentalities

of interstate commerce or of the mails in connection with the transactions, acts, practices, and

courses of business alleged herein.

20.    Venue lies in this District under Securities Act Section 22(a) [15 U.S.C. § 77v(a)] and

Exchange Act Section 27 [15 U.S.C. § 78aa].  Defendants transacted business in the Eastern District

of New York, and certain of the acts, practices, transactions, and courses of business alleged in this

Complaint occurred within this District.  For example, during most of the Relevant Period, between

2017 and 2022, Healthcare Solutions was headquartered in Glen Cove, New York.  Constantin, a

resident of Oyster Bay, New York until approximately April 2022, regularly worked out of

Healthcare Solutions' Glen Cove office and communicated with Smith, investors, auditors, and

others by telephone, email, and text message from this District.  Defendants also raised money from

investors located in this District.

## DEFENDANTS

21.    **Smith**, age 43, is a resident of Cleveland, Ohio.  Smith formed and controlled several

entities that include "Landes" in their names, including an entity registered in Sweden called Landes

and Compagnie Trust Privé KB, a/k/a Landes & Cie Private Trust ("Landes Trust").  Smith was

president of Landes Trust and held it out to Healthcare Solutions investors and the public as a

Swedish financial services firm. Smith also formed two entities in Wyoming (the "U.S. Landes

Entities"), one named "Landes and Compagnie Trust Prive KB" and the other named "Landes

Capital Management, LLC." On October 1, 2020, the Ohio Department of Commerce, Division of

Securities, entered into a Consent Agreement and Cease and Desist Order with Smith and the U.S.

Landes Entities for acting as unlicensed securities dealers, securities salespersons, and investment

advisers.

22.     In or around November 2017, as part of carrying out the scheme with Constantin to

fabricate the Landes Investment in the Company, Smith became a founding member of Healthcare

Solutions. From at least November 2017 through December 2022, Smith was Executive Chairman

and Director of the Company. From April 2021 to February 2023, Smith also served as the

Company's interim CEO and CFO. In connection with the SEC investigation that preceded the

filing of this action, Smith asserted his Fifth Amendment right against self-incrimination with

respect to questions and document requests relating to, among other matters, Smith's employment

at Landes Trust and Healthcare Solutions, payments made to Smith by Landes Trust and Healthcare

Solutions, the Landes Investment in Healthcare Solutions, and Smith's communications with

investors, potential investors, officers, directors, and employees of Landes Trust and Healthcare

Solutions.

23.     **Constantin**, age 46, is a resident of Slidell, Louisiana. Constantin previously held

Series 7, Series 63, and Series 24 licenses. In 2009, FINRA barred Constantin from associating with

any FINRA member firm for, among other things, failing to allow FINRA to examine the books

and records of a broker-dealer that Constantin owned and controlled, failing to respond to FINRA's

requests for information, and failing to maintain and preserve books and records required under

SEC rules. On July 6, 2011, the SEC brought a civil enforcement action, captioned *SEC v.*

*Constantin, et al.*, No. 11 Civ. 4642 (S.D.N.Y.), charging Constantin and his brokerage firm with violating Securities Act Section 17(a) and Exchange Act Section 10(b) and Rule 10b-5 thereunder by fraudulently inducing investors to provide more than $1.25 million to his firm for securities investments from 2008 to 2009. On May 6, 2013, the District Court entered a final judgment in that action permanently enjoining Constantin and his firm from violating these anti-fraud provisions, finding Constantin jointly and severally liable for more than $1.3 million in disgorgement and prejudgment interest, and ordering Constantin to pay a civil penalty of more than $1.1 million. Based on the District Court injunction, the SEC, in November 2013, permanently barred Constantin from, among other things, participating in any penny stock offering ("Penny Stock Bar") and associating with a broker-dealer.

24.     In 2017, Constantin co-founded Healthcare Solutions with another individual ("Co-Founder"), and later, Smith. From November 2017 to June 2020, Constantin was purportedly only a "consultant" to the Company and held the title of corporate comptroller. In June 2020, after formally becoming an employee, he assumed the additional title of head of commercial real estate operations. In March 2023, Constantin became Healthcare Solutions' interim CEO, interim CFO, and sole director after the departure of most other Company personnel. Throughout the Relevant Period, Constantin played a leading role in soliciting Healthcare Solutions investors and the plan to take the Company public through a reverse merger. He also carried out the scheme with Smith to fabricate the Landes Investment.

## OTHER RELEVANT ENTITIES AND PERSONS

25.     **HSH** is a Delaware corporation that was incorporated in November 2017 by Constantin and had its principal place of business in Glen Cove, New York. On June 14, 2019, it entered into a reverse merger agreement with a public shell company that was renamed HSMG in connection with the merger. The reverse merger was completed on April 15, 2021, whereupon

HSH became a wholly owned subsidiary of the publicly traded HSMG.  HSH has never been registered with the SEC in any capacity.  At all relevant times, HSH's stock met the definition of a "penny stock" under Exchange Act Section 3(a)(51) [15 U.S.C. § 78c(a)(51)] and Rule 3a51-1 [17 C.F.R. § 240.3a51-1] thereunder because the stock was offered to investors at less than five dollars per share and did not satisfy any of the exceptions to the definition of "penny stock" set forth in Rule 3a51-1.

26.    **HSMG** (f/k/a Verity Corp.) is a Delaware corporation that, at all relevant times, had principal places of business in Denver, Colorado; Glen Cove, New York; and Springhill, Louisiana. At all relevant times, HSMG was subject to the reporting requirements under Exchange Act Section 15(d) because it had an effective Securities Act registration statement and had more than the minimum number of shareholders of record.  Prior to April 19, 2022, its common stock was quoted on the OTC Pink Market; after April 19, 2022, on the OTC Expert Market.  At all relevant times, its common stock met the definition of a "penny stock" under Exchange Act Section 3(a)(51) [15 U.S.C. § 78c(a)(51)] and Rule 3a51-1 [17 C.F.R. § 240.3a51-1] thereunder because the stock traded below five dollars per share and did not satisfy any of the exceptions to the definition of "penny stock" set forth in Rule 3a51-1.  HSMG currently has no operations and lacks any material assets.

27.    **Landes Trust** was formed by Smith as a limited partnership in Stockholm, Sweden in November 2016.  Landes Trust has never actively conducted business in Sweden since its formation in 2016.  It has never been registered with, or authorized by, Sweden's Financial Supervisory Authority, as is required for entities providing any financial services in Sweden.  Landes Trust has never been registered with the SEC in any capacity.

28.    **Co-Founder** founded HSH with Constantin (and later, Smith) in 2017.  Co-Founder was an executive vice president and director of Healthcare Solutions until March 2023 and served as

the Company's interim CEO and CFO between February 9, 2023, and March 15, 2023.

**FACTS**

**I.    BACKGROUND ON LANDES TRUST**

29.    In November 2016, Smith registered Landes Trust as a limited partnership with the Swedish Companies Registration Office with an address—Frejgatan 13 in Stockholm—that matched the location of a mailbox rental facility.

30.    Smith also registered Landes Trust with the Society for Worldwide Interbank Financial Telecommunication SC ("SWIFT") as a "Non-Financial Institution," which SWIFT defines as an entity established to offer goods or perform services other than financial services.

31.    In March 2017, SWIFT issued Landes Trust a "non-connected" SWIFT Business Identifier Code ("BIC"), meaning that it was not authorized to connect to, or exchange messages over, the SWIFT inter-bank messaging network.  Instead, Landes Trust's "non-connected" BIC could be used only for identification purposes.

32.    Landes Trust was never registered with, or authorized by, Sweden's Financial Supervisory Authority to offer financial services in Sweden, as is required for all companies providing such services in Sweden.

33.    Landes Trust had no personnel in Sweden and had never conducted business in Sweden.

34.    Notwithstanding the foregoing, Smith portrayed Landes Trust as a sophisticated Sweden-based financial institution.

35.    During the Relevant Period, until at least October 2020, Landes Trust's website claimed that it offered clients "private trust services."  The website stated, "We offer clients direct access bank and brokerage accounts, whereby we maintain their assets in trust . . . . As trustee or as agent, we are able to act in your best interest by managing your investment portfolio.  This includes

providing you with a professional portfolio manager who will work with you to design a comprehensive asset allocation strategy . . . and provide ongoing investment management services."

36.     During the Relevant Period, until at least November 2018, Landes Trust's website also stated, "SWIFT access allow[*sic*] us to efficiently conduct cross-border, secure bank-to-bank communication and verification plus streamline our trade service, forex and securities businesses," which was false because Landes Trust's SWIFT BIC was not even connected to the SWIFT inter-bank messaging network.

37.     In May 2020, SWIFT notified Smith that the non-connected BIC that had been issued to Landes Trust would be terminated effective June 6, 2020, based on concerns that Landes Trust was using it for "illegal, illicit or fraudulent purposes or in a manner that might create confusion or misrepresent the organisation identified by the BIC."

38.     Nonetheless, through at least 2022, Smith held out Landes Trust as a SWIFT-registered financial institution, including by continuing to list the terminated BIC in his email signature block, by using the terminated BIC in correspondence with Healthcare Solutions' transfer agent, and by stating in purported Landes Trust "client statements" provided to Healthcare Solutions' auditor that Landes Trust "may also be contacted via SWIFT" using the terminated BIC.

## II.     DEFENDANTS' SCHEME TO FABRICATE ASSETS

### A.  Defendants' Creation of the Fictitious Landes Investment

39.     Constantin met Co-Founder in or around 2015 through their work on a transaction involving a medical device company.

40.     Constantin presented himself to Co-Founder as having significant investment banking and finance experience and claimed that he had close relationships and contacts with financial institutions.

41.     In or around 2017, Constantin sought to start a healthcare company with Co-

Founder that could, among other things, seek investor capital from physicians.

42.     In or around the fall of 2017, Constantin told Co-Founder, in substance, that Constantin had arranged for Smith, through Landes Trust, to invest more than $75 million in Healthcare Solutions and thereby permit the Company to satisfy the $75 Million Minimum.

43.     The $75 Million Minimum was relevant under the Anti-Kickback Statute [42 U.S.C. § 1320a-7b(b)] and the Physician Self-Referral Law [42 U.S.C. § 1395nn] ("Stark Law," and together with the Anti-Kickback Statute, the "Applicable Laws").  Together, the Applicable Laws seek to ensure that medical providers' judgments are not compromised by improper financial incentives and are instead based on their patients' best interests.  For example, under the Applicable Laws, if a physician has a financial relationship with an ancillary services provider, such as an investment interest in a laboratory company, the physician may not be able to refer patients to that provider absent an applicable legal exemption, such as the $75 Million Minimum.

44.     In connection with the purported Landes Investment, Smith joined the group of founders of Healthcare Solutions, and like Constantin and Co-Founder, received founder shares in the Company.  Smith also assumed the role of Executive Chairman and Director in November 2017.

45.     In truth, the Landes Investment was made up.  Smith and Constantin fabricated the investment to inflate Healthcare Solutions' assets, to create a false impression that the Company had substantial financial backing from a sophisticated financial institution, and to falsely make it appear that the Company satisfied the $75 Million Minimum.

46.     To provide supposed proof of the Landes Investment to Co-Founder, on December 7, 2017, Constantin emailed Co-Founder a screenshot that purportedly showed a balance of $83,950,950 in a "Securities/Deposit" account at Landes Trust in the name of "Healthcare Solutions Holdings Inc."

47.     This screenshot purported to represent confirmation by Constantin that the Landes

Investment had been transferred into an account at Landes Trust in the name of Healthcare Solutions.

48.     In fact, however, the screenshot was fake.  Constantin created it using Adobe Photoshop software, as reflected in the associated metadata.

49.     On December 19, 2017, in response to Co-Founder's request for written confirmation of the Landes Investment from Landes Trust, Constantin provided a letter addressed to Co-Founder signed by Smith as Landes Trust's managing director.

50.     Smith's December 19, 2017 letter claimed that, in exchange for a 10% equity stake in Healthcare Solutions, Landes Trust "agreed to irrevocabl[y] contribute into [Healthcare Solutions], marketable securities with an aggregate asset value of greater than $75,000,000 USD."

51.     Smith falsely represented in the letter that Landes Trust "is a Swedish financial institution" offering clients "direct access bank and brokerage accounts, whereby we maintain their assets in trust."

52.     In fact, as set forth above and as Smith knew, Landes Trust was not a financial institution, was not licensed or authorized to offer bank or brokerage accounts, and had no active business in Sweden.  Nor did Smith or Landes Trust contribute any marketable securities into, or hold any marketable securities on behalf of, Healthcare Solutions, let alone marketable securities with an aggregate asset value of greater than $75 million required to meet the $75 Million Minimum.

**B.  Defendants Used the Fictitious Landes Investment to Solicit Investors**

1.  <u>False Statements in Offering Documents</u>

53.     Between November 2017 and September 2020, Defendants raised approximately $2.7 million for Healthcare Solutions in private placements from more than 200 investors, many of whom were physicians or otherwise worked in the healthcare profession.

54.     Defendants' pitch to investors highlighted the Landes Investment and that the

company had more than $75 million in assets.

55.    As part of Healthcare Solutions' fundraises, Constantin participated in drafting, reviewing, and disseminating offering materials—including private placement memoranda ("PPMs"), pitch decks, and subscription agreements—which contained false and misleading representations regarding Landes Trust, the Landes Investment, Healthcare Solutions' balance sheet, and the Company's satisfaction of the $75 Million Minimum.

56.    Healthcare Solutions' Board of Directors, which Smith chaired, approved these false PPMs and other offering materials used to solicit investors.

57.    For example, in late 2017, Constantin drafted—and the Smith-chaired Board approved—the PPM for a private placement of Healthcare Solutions shares ("2017 PPM") that described the purported Landes Investment, which Defendants knew they fabricated, and the Company's purported satisfaction of the $75 Million Minimum.

58.    This 2017 PPM stated that Healthcare Solutions "has entered into a share exchange agreement with [Landes Trust], where ten (10%) percent of HSH's Class 'A' Common stock is being exchanged for securities with asset value in excess of $80,000,000 prior to the year end of 2017. Based upon this structure the company believes that a physician investing [through the private placement] is provided adequate exemption according to [the Applicable Laws]."

59.    In late 2017, in response to questions raised by a prospective investor regarding the 2017 PPM, Constantin authored a response, sent by the Co-Founder, falsely stating that the Company had "entered into partnerships with a large European private equity group [i.e., Landes Trust] that has funded [HSH] with $82M in assets"—a reference to the fictitious Landes Investment.

60.    From 2018 through 2020, Constantin participated in drafting and reviewing—and the Smith-chaired Board of Directors approved—the offering materials for successive private

placements of Healthcare Solutions shares that contained substantially similar misrepresentations about Smith-controlled Landes Trust, the Landes Investment, the Company's assets, and its satisfaction of the $75 Million Minimum.

61.    For example, these materials stated that the Company's "core backers are large global private equity firms and private banks, with the current financial strength of [Healthcare Solutions] being over $75M U.S. in asset value[]"—falsely representing the Smith-controlled Landes Trust as a large global financial conglomerate, which it was not.

62.    In describing Smith's qualifications as Chairman of Healthcare Solutions' Board, these materials claimed that Smith had "15+ years of experience in the finance industry" and was currently "Managing Director and Senior Portfolio Manager" of Landes Trust, which it described as "[a] private trust advisory with millions i[n] asset[s] under-care; Landes offers trust administration, analyst, brokerage and other services to its international client base."

63.    These materials further stated, for example, that the Company "currently has over $83M in assets" and would "operate without violating" the Applicable Laws by "maintain[ing] $75+ million in investor equity"—all based on the fictitious Landes Investment.

64.    These materials also falsely assured physicians being solicited for investments that investing in Healthcare Solutions would be "100% legal" and "compliant" with the Applicable Laws because, among other things, the Company satisfied the $75 Million Minimum.

65.    Similarly, a deck that was part of Healthcare Solutions' investor materials as of early 2020—which Constantin helped draft, and which the Smith-chaired Board approved—claimed that the Company had a "[s]trong financial standing" with "over $86 [million] in liquid assets for strategic expansion," and that it "has assets in excess of $80 Million raised from a sizeable international capital markets consortium."

66.    But, as Defendants knew, these representations were false because Healthcare

Solutions had no significant liquid assets, let alone anywhere close to $86 million, that it could have used for expansion.

67.    Constantin also disseminated false offering documents to investors and other Healthcare Solutions personnel for purposes of soliciting investors, including at least one instance, on September 23, 2019, in which Constantin sent investors shareholder agreements containing the false representation that Landes Trust had invested into Healthcare Solutions "securities with asset value in excess of $80,000,000," as well as instructions on how to wire money to purchase shares in Healthcare Solutions.

68.    Defendants' representations regarding Healthcare Solutions' assets, including the purported Landes Investment, were important to investors' decision to invest in the Company.

69.    These representations falsely signaled that Healthcare Solutions had a healthy balance sheet, the backing of a sophisticated financial institution, and a competitive advantage stemming from its satisfaction of the $75 Million Minimum.

70.    Constantin acknowledged in a 2018 email about the Company's fundraises to Co-Founder and a Healthcare Solutions Board member that the Company's compliance with the Applicable Laws, including the $75 Million Minimum, was "critical" to its ability to operate legally "so we personal[ly] are not committing a felony!"

71.    Smith and Constantin knew, however, that Landes Trust had not invested any assets in, and was not holding any assets on behalf of, Healthcare Solutions and that their representations to investors about the Company having more than $75 million in assets were false.

2.    Fabrication of Documents Used to Solicit Investor-1

72.    Investor-1 was part of a group of investors that invested more than $50,000 in a private placement of Healthcare Solutions shares in or around August 2018.

73.    Prior to that investment, Constantin gave Investor-1 a copy of Smith's December 19,

2017 letter to Co-Founder, which falsely confirmed the Landes Investment and its purported irrevocability.

74.     Constantin told Investor-1, in substance, that the Landes Investment satisfied the $75 Million Minimum.

75.     As ostensible proof of the then-current value of the Landes Investment, Constantin sent Investor-1 a screenshot purporting to show a balance of approximately $84 million in Healthcare Solutions' account at Landes Trust as of August 10, 2018.

76.     As with the fabricated screenshot that Constantin had provided to Co-Founder in December 2017, Constantin fabricated the August 2018 screenshot he provided to Investor-1 using Adobe Photoshop software, as reflected in the screenshot's metadata.

77.     After obtaining the false December 19, 2017 letter from Smith and the fabricated screenshot purporting to verify the Landes Investment, Investor-1 and others in his investor group went through with their participation in the private placement by investing more than $50,000.

## IV.    DEFENDANTS' ADDITIONAL LIES AFTER TAKING HEALTHCARE SOLUTIONS PUBLIC

78.     In June 2019, Healthcare Solutions entered into a reverse merger agreement with a publicly traded shell company that was renamed HSMG in connection with the merger.

79.     Constantin was Healthcare Solutions' principal representative in negotiating and executing the reverse merger.  He worked closely with accountants, auditors, the transfer agent, and representatives of the shell company to complete all the necessary actions and documentation.

80.     Among other things, in order to complete the reverse merger transaction, the Company needed to file a Form 8-K that included as exhibits certain audited and unaudited financial statements for HSH.

81.     The Company ultimately filed a Form 8-K on April 21, 2021 to report the closing of the reverse merger transaction on April 15, 2021, which included as exhibits audited financial

statements for HSH for the years ended September 30, 2020 and September 30, 2019 and unaudited financial statements for HSH for the three months ended December 31, 2020 and December 31, 2019.  The included financial statements falsely showed investments "comprised of securities that trade frequently with quoted prices" of more than $80 million as of each of these periods, and represented more than 97% of the Company's total reported assets in each of these periods.

82.     Smith signed false management representation letters to HSH's auditor that audited the year-end financial statements and reviewed the unaudited interim financial statements that falsely represented, among other things, that he had no knowledge of fraud or suspected fraud and that the Company had properly recorded all investments.  As Smith knew, he had participated in creating the fictitious Landes Investment and the inclusion of the fictitious Landes Investment in the Company's financial statements massively inflated the Company's assets.

83.     Smith signed the April 21, 2021 Form 8-K as the Company's interim CEO and CFO, titles that he assumed upon completion of the Company's reverse merger.

84.     The April 21, 2021 Form 8-K also misrepresented Smith's background and Landes Trust.  The filing described Smith as a "professional investment advisor for institutional clients" and the "President of [Landes Trust], a Swedish asset management firm."

85.     These statements were false and misleading because, among other things, Landes Trust was not an asset management firm, and Smith was not a professional investment advisor for institutional clients at Landes Trust.

86.     Additionally, while the Company described Smith's purported qualifications in detail, including his experience as President of Landes Trust, this description was misleading because it omitted that Smith and the U.S. Landes Entities were the subject of a cease-and-desist order for state securities law violations.

87.     In connection with the closing of the reverse merger transaction, shares of pre-

merger HSH common stock were converted into publicly traded HSMG common stock at a pre-determined ratio.

88.     After becoming a public company, Healthcare Solutions continued to file periodic, quarterly, and annual reports with the SEC on Forms 8-K, 10-Q, and 10-K, respectively.

89.     Among other filings, the Company filed a Form 10-Q on August 23, 2021, and a Form 10-K on June 3, 2022.

90.     Smith signed each of the foregoing filings as the Company's principal executive officer and principal financial and accounting officer with the titles interim CEO and CFO.

91.     Smith also certified that the August 23, 2021 Form 10-Q and June 3, 2022 Form 10-K were materially complete and accurate and that the financial statements incorporated therein fairly presented the financial condition of Healthcare Solutions in all material respects.

92.     In fact, however, the August 23, 2021 Form 10-Q and June 3, 2022 Form 10-K each included financial statements that continued to enormously overstate the Company's assets by the inclusion of the fictitious Landes Investment.  In these financial statements, the Landes Investment was valued at more than $83 million, representing over 95% of the Company's total reported assets.

93.     In or around December 2021, Smith also falsely represented to the Company's auditor that Healthcare Solutions' financial statements for the year ending September 30, 2021, were prepared in conformity with Generally Accepted Accounting Principles ("GAAP") and that he did not have any knowledge of any actual, alleged, or suspected fraud affecting the Company.

94.     Smith's representations were false because, as he knew, the financial statements materially inflated the Company's assets due to the inclusion of the fictitious Landes Investment and he was engaged in the fraudulent scheme described herein.

95.     The August 23, 2021 Form 10-Q and June 3, 2022 Form 10-K further stated that "[i]n the U.S. there are certain regulatory requirements for healthcare companies in [the] U.S. to

maintain a minimum amount of capital on hand or they are subject to additional rules and regulation" and then falsely claimed that the Landes Investment by the Sweden-based Landes Trust had "provided enough capital for the company so that all regulatory capital thresholds are met."

96.     The statements in the Company's filings about the Landes Investment and the inflation of its balance sheet significantly misrepresented Healthcare Solutions' financial condition.

97.     On March 21, 2023, Healthcare Solutions filed a Form 8-K announcing that, on March 15, 2023, Constantin was appointed as Healthcare Solutions' interim CEO, interim CFO, and sole member of the Board of Directors.

98.     Constantin signed this Form 8-K as interim CEO and CFO.

99.     The March 21, 2023 Form 8-K stated that Constantin (i) had "over 20 years[] experience[] as a healthcare industry professional specializing as a corporate comptroller and as a company commercialization and go to market strategy expert"; (ii) "developed and then oversaw and ran an advanced cardio diagnostic screening program for Novartis Pharmaceuticals across the United States"; (iii) "worked for a number of Private Equity Firms, Hedge Funds, Registered Investment Advisors, and Investment Banks"; and (iv) had "over a decade of investment banking experience."

100.     These statements about Constantin's purported experience and qualifications were, at minimum, misleading because they failed to disclose that Constantin had been found liable for securities fraud in federal court and had been barred by the SEC from participating in any offering of a penny stock, which at the time included stock issued by Healthcare Solutions.

101.     Constantin and the Company concealed Constantin's regulatory history contrary to advice obtained by the Company pursuant to a legal opinion in 2018 that "proper disclosures be made about [Constantin's] regulatory history" if a circumstance arose that "could be interpreted as

involvement with a capital raising transaction, or holding a position of managerial control[.]"

## V.  DEFENDANTS' ADDITIONAL ACTIONS TO CONCEAL THEIR SCHEME

### A.  Defendants Created False Documents to Cover Up Their Fabrication of the Landes Investment

102.    In or about August 2019, Defendants contacted a firm that licenses software for hedge funds ("Hedge Fund Services Firm") to create a portfolio tracker for the purported portfolio of marketable securities comprising the Landes Investment.

103.    Smith told the Hedge Fund Services Firm that Constantin was Landes Trust's office manager, that Constantin's email address was josh@landestrust.se, and that Constantin would be the primary user of the portfolio tracker.

104.    Smith emailed a list of the positions purportedly held in Healthcare Solutions' account at Landes Trust to the Hedge Fund Services Firm to be loaded into the portfolio tracker.

105.    Before the portfolio tracker could be activated, the positions and price data needed to be validated, which was typically done by setting up third-party connectivity with the prime broker or custodian of the securities.

106.    Defendants told the Hedge Fund Services Firm that they did not want to set up third-party connectivity, and instead wanted a standalone tracker populated with the data provided by Defendants themselves.

107.     As a result, the positions uploaded to the portfolio tracker were not validated, and the portfolio tracker was never activated.

108.    In or around April 2020, Constantin sent a screenshot of the inactive portfolio tracker that was populated with data provided by Defendants to Healthcare Solutions' head of compliance as purported proof of the value of the Landes Investment, which it was not.  The screenshot had also been manually altered to include a header purporting to identify the portfolio of

securities as belonging to "Healthcare Solutions."

**B. Defendants Took Additional Actions to Mislead the Company's Auditors and Accountants regarding the Landes Investment**

109.    In addition to Smith providing false management representation letters to the Company's auditor, Smith and Constantin also took additional actions to mislead the Company's auditors and accountants about the Landes Investment by fabricating Landes Trust account statements and providing false confirmations of the existence of the Landes Investment.

110.    During the preparation and audits of the Company's financial statements in 2021 and 2022, the Company's accountant, who was helping to finalize the financial statements, and auditor requested copies of "client statements" issued by Landes Trust for Healthcare Solutions' investment account so that they could validate the reported market values of the Landes Investment.

111.    For example, on December 12, 2021, a Healthcare Solutions accountant emailed Constantin asking for the "Landes [Trust] statement for Q3 2021."

112.    On December 14, 2021, Constantin forwarded the request to Smith and, later that day, provided Smith the following figures in the same email chain: "89,768,421.73 end of Q2," "89,823,345.51 end of Q3," and "89,847,213.88 current," thereby indicating to Smith what values to include when creating a fake account statement.

113.    Consistent with those amounts, the purported Landes Trust "Client Statement" for Healthcare Solutions for the period July 1, 2021 to September 30, 2021, which was provided to the Company's auditor, reflected balances of $89,768,421.73 as of June 30, 2021 and $89,823,345.51 as of September 30, 2021.

114.    In fact, this purported "Client Statement" was fake. As reflected in the metadata, it was created on December 14, 2021—the date of Constantin's emails to Smith referenced in paragraph 112 above—by altering a file that originated with a legitimate multinational financial institution unrelated to Landes Trust to make it appear as though Landes Trust was a legitimate

financial institution.

115.    Smith also created other quarterly "client statements" purporting to show the value of the Landes Investment by altering authentic client statements from the unrelated financial institution that were associated with an account having no relation to Healthcare Solutions. At least one of those client statements—for the period April 1, 2021 to June 30, 2021—was provided to the Company's auditor.

116.    In addition, in connection with the audit of the Company's financial statements for the fiscal year ended September 30, 2021, Healthcare Solutions' auditor required a signed confirmation of the Landes Investment by Landes Trust. Accordingly, Constantin prepared a confirmation request, signed by Smith as Healthcare Solutions' Chairman, to provide to Landes Trust. The request asked Landes Trust to confirm for Healthcare Solutions' auditor that Landes Trust had made the Landes Investment in November 2017, and that the Landes Investment's market value was approximately $89.8 million on September 30, 2021.

117.    On or about January 14, 2022, Healthcare Solutions' auditor received the requested confirmation, signed by Smith's ostensible business partner at Landes Trust.

118.    As Defendants knew, the information that they arranged for Landes Trust to confirm for the auditor was false because the Landes Investment was fabricated.

## VI.    HEALTHCARE SOLUTIONS' COLLAPSE

119.    Healthcare Solutions' business plan was never fully realized and the Company conducted only limited business operations consisting primarily of operations relating to a handful of clinics.

120.    Nonetheless, Defendants compensated themselves handsomely from the Company's coffers, with, for example, more than $450,000 flowing directly from the Company into Smith's personal bank accounts between May 2022 and March 2023, and almost $500,000 into Constantin's

personal bank accounts between August 2019 and March 2023.  During the Relevant Period, Defendants also used Company credit cards to pay for apparent personal expenses, including airfare for family members and other non-business expenses.

121.    By the end of 2022, even Healthcare Solutions' limited business operations had effectively collapsed, as clinics were closed, and employees stopped getting paid.

122.    On February 14, 2023, Healthcare Solutions filed a Form 8-K disclosing that Smith had been removed as a Board member on December 27, 2022, and then "let go" from his interim CEO and CFO roles on February 9, 2023, to reduce costs.

123.    The February 14, 2023 filing attached a separation agreement with Smith providing that the Landes Investment—which Defendants previously characterized as irrevocable—would be "returned" to Landes Trust in exchange for the shares that Landes Trust had been issued in connection with the Landes Investment.

124.    By April 21, 2023, the price of Healthcare Solutions' stock had dropped to less than a penny per share, rendering investors' holdings of the stock nearly worthless.

## VI.    CONSTANTIN'S VIOLATION OF HIS PENNY STOCK BAR

125.    Throughout the Relevant Period, Constantin was subject to the Penny Stock Bar, which prohibited him from participating in any offering of a penny stock.

126.    The SEC ordered the Penny Stock Bar against Constantin in November 2013 pursuant to Exchange Act Section 15(b)(6)(A) [15 U.S.C. § 78o(b)(6)(A)].

127.    At all relevant times, Healthcare Solutions' stock qualified as a penny stock because it was an equity security that did not meet any of the exceptions from the definition of a penny stock under Exchange Act Section 3(a)(51) [15 U.S.C. § 78c(a)(51)] and Rule 3a51-1 [17 C.F.R. § 240.3a51-1] thereunder.

128.    In September 2017, Constantin obtained a legal opinion in connection with his

24

potential involvement with another penny stock issuer unrelated to Healthcare Solutions—which he

later shared with members of Healthcare Solutions' Board—advising him that, in light of his

regulatory history and his Penny Stock Bar, Constantin "must remain[] far removed from the

management and capital raising functions" of the issuer; "should not create documents or perform

tasks primarily related to the offering of securities"; and could have at most "transitory and

incidental" involvement in any securities offering by the issuer.

129.    Despite knowing that his conduct was prohibited, Constantin drafted at least

significant portions of private placement memoranda and other offering materials for Healthcare

Solutions, as set forth above, and participated in calls and in-person meetings with prospective

investors to pitch Healthcare Solutions shares.

130.    Between at least 2018 and 2021, Constantin also served as Healthcare Solutions'

principal representative in negotiating and effectuating the reverse merger.

131.    After Healthcare Solutions became public in April 2021, Constantin worked with the

transfer agent to issue stock certificates to shareholders and to make edits and corrections to the

Company's shareholder list.

132.    Constantin engaged in the conduct described in paragraphs 125 to 131 above

without the consent of the SEC.

**FIRST CLAIM FOR RELIEF**
**Violations of Securities Act Section 17(a)**
**(Both Defendants)**

133.    The SEC re-alleges and incorporates by reference here the allegations in paragraphs

1 through 12, and 21 through 124.

134.    Defendants, directly or indirectly, singly or in concert, in the offer or sale of

securities and by the use of the means or instruments of transportation or communication in

interstate commerce or the mails, (i) knowingly or recklessly have employed one or more devices,

schemes or artifices to defraud, (ii) knowingly, recklessly, or negligently have obtained money or property by means of one or more untrue statements of a material fact or omissions of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and/or (iii) knowingly, recklessly, or negligently have engaged in one or more transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

135.    By reason of the foregoing, Defendants, directly or indirectly, singly or in concert, have violated and, unless enjoined, will again violate Securities Act Section 17(a) [15 U.S.C. § 77q(a)].

**SECOND CLAIM FOR RELIEF**
**Aiding and Abetting Violations of Securities Act Section 17(a)**
**(Smith)**

136.    The SEC re-alleges and incorporates by reference here the allegations in paragraphs 1 through 12, and 21 through 124.

137.    As alleged above, Healthcare Solutions and Constantin violated Securities Act Section 17(a) [15 U.S.C. § 77q(a)].

138.    Smith knowingly or recklessly provided substantial assistance to Healthcare Solutions with respect to its violations of Securities Act Section 17(a) [15 U.S.C. § 77q(a)].

139.    Smith knowingly or recklessly provided substantial assistance to Constantin with respect to his violations of Securities Act Section 17(a) [15 U.S.C. § 77q(a)].

140.    By reason of the foregoing, Smith is liable pursuant to Securities Act Section 15(b) [15 U.S.C. § 77o(b)] for aiding and abetting Healthcare Solutions' and Constantin's violations of Securities Act Section 17(a) [15 U.S.C. § 77q(a)] and, unless enjoined, Smith will again aid and abet

these violations.

## THIRD CLAIM FOR RELIEF
### Aiding and Abetting Violations of Securities Act Section 17(a)
### (Constantin)

141.    The SEC re-alleges and incorporates by reference here the allegations in paragraphs 1 through 12, and 21 through 124.

142.    As alleged above, Healthcare Solutions and Smith violated Securities Act Section 17(a) [15 U.S.C. § 77q(a)].

143.    Constantin knowingly or recklessly provided substantial assistance to Healthcare Solutions with respect to its violations of Securities Act Section 17(a) [15 U.S.C. § 77q(a)].

144.    Constantin knowingly or recklessly provided substantial assistance to Smith with respect to his violations of Securities Act Section 17(a) [15 U.S.C. § 77q(a)].

145.    By reason of the foregoing, Constantin is liable pursuant to Securities Act Section 15(b) [15 U.S.C. § 77o(b)] for aiding and abetting Healthcare Solutions' and Smith's violations of Securities Act Section 17(a) [15 U.S.C. § 77q(a)] and, unless enjoined, Constantin will again aid and abet these violations.

## FOURTH CLAIM FOR RELIEF
### Violations of Exchange Act Section 10(b) and Rule 10b-5 Thereunder
### (Both Defendants)

146.    The SEC re-alleges and incorporates by reference here the allegations in paragraphs 1 through 12, and 21 through 124.

147.    Defendants, directly or indirectly, singly or in concert, in connection with the purchase or sale of securities and by the use of means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange, knowingly or recklessly have (i) employed one or more devices, schemes, or artifices to defraud, (ii) made one or more untrue statements of a material fact or omitted to state one or more material facts necessary in order to make the

statements made, in light of the circumstances under which they were made, not misleading, and/or (iii) engaged in one or more acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

148.     By reason of the foregoing, Defendants, directly or indirectly, singly or in concert, have violated and, unless enjoined, will again violate Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder.

### FIFTH CLAIM FOR RELIEF
**Aiding and Abetting Violations of Exchange Act Section 10(b) and Rule 10b-5 Thereunder (Smith)**

149.     The SEC re-alleges and incorporates by reference here the allegations in paragraphs 1 through 12, and 21 through 124.

150.     As alleged above, Healthcare Solutions and Constantin violated Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder.

151.     Smith knowingly or recklessly provided substantial assistance to Healthcare Solutions with respect to its violations of Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder.

152.     Smith knowingly or recklessly provided substantial assistance to Constantin with respect to his violations of Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder.

153.     By reason of the foregoing, Smith is liable pursuant to Exchange Act Section 20(e) [15 U.S.C. § 78t(e)] for aiding and abetting Healthcare Solutions' and Constantin's violations of Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder

and, unless enjoined, Smith will again aid and abet these violations.

### SIXTH CLAIM FOR RELIEF
### Aiding and Abetting Violations of Exchange Act Section 10(b) and Rule 10b-5 Thereunder
### (Constantin)

154.    The SEC re-alleges and incorporates by reference here the allegations in paragraphs 1 through 12, and 21 through 124.

155.    As alleged above, Healthcare Solutions and Smith violated Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5(b) [17 C.F.R. § 240.10b-5(b)] thereunder.

156.    Constantin knowingly or recklessly provided substantial assistance to Healthcare Solutions with respect to its violations of Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5(b) [17 C.F.R. § 240.10b-5b] thereunder.

157.    Constantin knowingly or recklessly provided substantial assistance to Smith with respect to his violations of Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5(b) [17 C.F.R. § 240.10b-5b] thereunder.

158.    By reason of the foregoing, Constantin is liable pursuant to Exchange Act Section 20(e) [15 U.S.C. § 78t(e)] for aiding and abetting Healthcare Solutions' and Smith's violations of Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5(b) [17 C.F.R. § 240.10b-5(b)] thereunder and, unless enjoined, Constantin will again aid and abet these violations.

### SEVENTH CLAIM FOR RELIEF
### Violations of Exchange Act Section 13(b)(5) and Exchange Act Rule 13b2-1
### (Both Defendants)

159.    The SEC re-alleges and incorporates by reference here the allegations in paragraphs 1 through 12, and 21 through 124.

160.    By engaging in the conduct described above, Defendants each knowingly directly or indirectly falsified, or caused to be falsified, books, records, or accounts of Healthcare Solutions, an

issuer subject to Exchange Act Section 13(b)(2) [15 U.S.C. § 78m(b)(2)].

161.    By reason of the foregoing, Defendants violated and, unless enjoined, will again violate Exchange Act Section 13(b)(5) [15 U.S.C. § 78m(b)(5)] and Exchange Act Rule 13b2-1 [17 C.F.R. § 240.13b2-1] thereunder.

## EIGHTH CLAIM FOR RELIEF
### Aiding and Abetting HSMG's Violations of Exchange Act Section 13(b)(2)(A)
### (Both Defendants)

162.    The SEC re-alleges and incorporates by reference here the allegations in paragraphs 1 through 12, and 21 through 124.

163.    As described above, from at least 2021 through 2023, HSMG violated Exchange Act Section 13(b)(2)(A) [15 U.S.C. § 13(b)(2)(A)] by failing to make and keep books, records, or accounts, which, in reasonable detail, accurately and fairly reflected its transactions and dispositions of its assets.

164.    Defendants knowingly or recklessly provided substantial assistance to HSMG with respect to its violations of Exchange Act Section 13(b)(2)(A) [15 U.S.C. § 13(b)(2)(A)].

165.    By reason of the foregoing, Defendants are liable pursuant to Exchange Act Section 20(e) [15 U.S.C. § 78t(e)] for aiding and abetting HSMG's violations of Exchange Act Section 13(b)(2)(A) [15 U.S.C. § 13(b)(2)(A)] and, unless enjoined, Defendants will again aid and abet these violations.

## NINTH CLAIM FOR RELIEF
### Violations of Exchange Act Section 13(b)(5) and Rule 13b2-2
### (Smith)

166.    The SEC re-alleges and incorporates by reference here the allegations in paragraphs 1 through 12, and 21 through 124.

167.    As a result of Smith's conduct described above, the books, records, and accounts of

Healthcare Solutions falsely recorded the fabricated Landes Investment as an asset of the Company.

168.    By engaging in the conduct described above, Smith caused to be made a materially false or misleading statement or omitted to state, or caused another person to omit to state, a material fact necessary in order to make statements made, in light of the circumstances under which such statements were made, not misleading, to an accountant in connection with an audit, review, or examination of the financial statements of the issuer required to be made and in the preparation or filing of documents and reports required to be filed with the Commission in violation of Exchange Act Section 13(b)(5) [15 U.S.C. § 78m(b)(5)] and Rule 13b2-2 [17 C.F.R. § 240.13b2-2] thereunder.

169.    By reason of the foregoing, Smith violated and, unless enjoined, will again violate Exchange Act Section 13(b)(5) [15 U.S.C. § 78m(b)(5)] and Rule 13b2-2 [17 C.F.R. § 240.13b2-2].

## TENTH CLAIM FOR RELIEF
### Aiding and Abetting Smith's Violations of Exchange Act Rule 13b2-2
### (Constantin)

170.    The SEC re-alleges and incorporates by reference here the allegations in paragraphs 1 through 12, and 21 through 124.

171.    As described above, Smith violated Exchange Act Rule 13b2-2 [17 C.F.R. § 240.13b2-2].

172.    Constantin knowingly or recklessly provided substantial assistance to Smith with respect to Smith's violations of Exchange Act Rule 13b2-2 [17 C.F.R. § 240.13b2-2].

173.    By reason of the foregoing, Constantin is liable pursuant to Exchange Act Section 20(e) [15 U.S.C. § 78t(e)] for aiding and abetting Smith's violations of Exchange Act Rule 13b2-2 [17 C.F.R. § 240.13b2-2] and, unless enjoined, Constantin will again aid and abet these violations.

## ELEVENTH CLAIM FOR RELIEF
### Violation of Exchange Act Section 15(b)(6)(B)(i)
### (Constantin)

174.    The SEC re-alleges and incorporates by reference here the allegations in paragraphs

1 through 12 and 21 through 132.

175.    As alleged above, Constantin, as to whom an order under Exchange Act

Section 15(b)(6)(A) [15 U.S.C. § 78o(b)(6)(A)] was in effect at all relevant times, without the consent

of the SEC, willfully participated in an offering of a penny stock in contravention of such order.

176.    By reason of the foregoing, Constantin, directly or indirectly, singly or in concert, has

violated and, unless enjoined, will again violate Exchange Act Section 15(b)(6)(B)(i) [15 U.S.C.

§ 78o(b)(6)(B)(i)].

## TWELFTH CLAIM FOR RELIEF
### Aiding and Abetting HSMG's Violations of Exchange Act Section 15(d) and Rules 12b-20, 15d-1, 15d-11, and 15d-13
### (Both Defendants)

177.    The SEC re-alleges and incorporates by reference here the allegations in paragraphs

1 through 12, and 21 through 124.

178.    Exchange Act Section 15(d) [15 U.S.C. §78o(d)] and Rules 15d-1, 15d-11, and 15d-13

[17 C.F.R. §§ 240.15d-1, 240.15d-11, and 240.15d-13] thereunder require issuers of securities that

have filed certain registration statements to file with the SEC annual, quarterly, and current reports.

179.    Exchange Act Rule 12b-20 [17 C.F.R. § 240.12b-20] provides that in addition to the

information expressly required in a statement or report, there shall be added such further material

information, if any, as may be necessary to make the required statements, in light of the

circumstances under which they are made, not misleading.

180.    HSMG was required to file annual, quarterly, and current financial reports with the

SEC pursuant to Exchange Act Section 15(d) [15 U.S.C. §78o(d)] and Rules 15d-1, 15d-11, and 15d-

13 [17 C.F.R. §§ 240.15d-1, 240.15d-11, and 240.15d-13] thereunder.

181.    As described above, between at least 2021 through 2023, HSMG violated Exchange

Act Section 15(d) [15 U.S.C. § 78o(d)] and Rules 12b-20, 15d-1, 15d-11, and 15d-13 [17 C.F.R.

§§ 240.12b-20, 240.15d-1, 240.15d-11, and 240.15d-13] thereunder by filing reports filed on Form

10-K, Form 10-K, and Form 8-K with the SEC that were materially false and misleading, or which

failed to include material information necessary to make the required statements in the reports, in

light of the circumstances under which they were made, not misleading.

182.    Defendants knowingly or recklessly provided substantial assistance to HSMG with

respect to its violations of Exchange Act Section 15(d) [15 U.S.C. § 78o(d)] and Rules 12b-20, 15d-1,

15d-11, and 15d-13 [17 C.F.R. §§ 240.12b-20, 240.15d-1, 240.15d-11, and 240.15d-13] thereunder.

183.    By reason of the foregoing, Defendants are liable pursuant to Exchange Act

Section 20(e) [15 U.S.C. § 78t(e)] for aiding and abetting HSMG's violations of Exchange Act

Section 15(d) [15 U.S.C. § 78o(d)] and Rules 12b-20, 15d-1, 15d-11, and 15d-13 [17 C.F.R.

§§ 240.12b-20, 240.15d-1, 240.15d-11, and 240.15d-13] thereunder and, unless enjoined, Defendants

will again aid and abet these violations.

**THIRTEENTH CLAIM FOR RELIEF**
**Violation of Exchange Act Rule 15d-14**
**(Smith)**

184.    The SEC re-alleges and incorporates by reference here the allegations in paragraphs

1 through 12, and 21 through 124.

185.    Exchange Act Rule 15d-14 [17 C.F.R. § 240.15d-14] requires that each report filed

pursuant to Exchange Act Section 15(d) [15 U.S.C. § 78o(d)] must include a certification signed by

the principal executive and principal financial officer of the issuer.  Among the items that the

officer(s) must certify is that the filing, to the best of their knowledge, does not contain any untrue

statement of material fact or omit to state a material fact necessary to make the statements made, in

light of the circumstances in which such statements were made, not misleading.

186.    As described above, between at least 2021 through 2022, as HSMG's principal

executive and principal financial officer, Smith violated Rule 15d-14 by falsely certifying that the

reports HSMG filed on Form 10-K and Form 10-Q contained no material misstatements or

omissions.

187.    By reason of the foregoing, Smith violated and, unless enjoined, will again violate, Exchange Act Rule 15d-14 [17 C.F.R. § 240.15d-14]

## PRAYER FOR RELIEF

WHEREFORE, the SEC respectfully requests that the Court enter a Final Judgment:

### I.

Permanently enjoining Defendants and their agents, servants, employees and attorneys and all persons in active concert or participation with any of them from violating, or aiding and abetting violations of, directly or indirectly, Securities Act Section 17(a) [15 U.S.C. § 77q(a)], Exchange Act Section 10(b) [15 U.S.C. § 78j(b)], and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder;

### II.

Permanently enjoining Smith and his agents, servants, employees and attorneys and all persons in active concert or participation with any of them from violating, or aiding and abetting violations of, directly or indirectly, Exchange Act Sections 13(b)(2)(A), 13(b)(5), and 15(d) [15 U.S.C. §§ 78m(b)(2)(A), 78m(b)(5), and 78o(d)] and Rules 12b-20, 13b2-1, 13b2-2, 15d-1, 15d-11, 15d-13, and 15d-14 [17 C.F.R. §§ 240.12b-20, 240.13b2-21, 240.13b2-2, 240.15d-1, 240.15d-11, 240.15d-13, and 240.15d-14] thereunder;

### III.

Permanently enjoining Constantin and his agents, servants, employees and attorneys and all persons in active concert or participation with any of them from violating, or aiding and abetting violations of, directly or indirectly, Exchange Act Sections 13(b)(2)(A), 13(b)(5), 15(b)(6)(B)(i), and 15(d) [15 U.S.C. §§ 78m(b)(2)(A), 78m(b)(5), 78o(b)(6)(B)(i), and 78o(d)] and Rules 12b-20, 13b2-1, 13b2-2, 15d-1, 15d-11, and 15d-13 [17 C.F.R. §§ 240.12b-20, 240.13b2-1, 240.13b2-2, 240.15d-1, 240.15d-11, and 240.15d-13] thereunder;

**IV.**

Ordering Defendants to disgorge all ill-gotten gains they received directly or indirectly, with prejudgment interest thereon, as a result of the alleged violations, pursuant to Exchange Act Sections 21(d)(3), 21(d)(5), and 21(d)(7) [15 U.S.C. §§ 78u(d)(3), 78u(d)(5), and 78u(d)(7)];

**V.**

Ordering Defendants to pay civil monetary penalties under Securities Act Section 20(d) [15 U.S.C. § 77t(d)] and Exchange Act Section 21(d)(3) [15 U.S.C. § 78u(d)(3)];

**VI.**

Permanently prohibiting Defendants from serving as an officer or director of any company that has a class of securities registered under Exchange Act Section 12 [15 U.S.C. § 78l] or that is required to file reports under Exchange Act Section 15(d) [15 U.S.C. § 78o(d)], pursuant to Securities Act Section 20(e) [15 U.S.C. § 77t(e)] and Exchange Act Section 21(d)(2) [15 U.S.C. § 78u(d)(2)];

**VII.**

Permanently prohibiting Smith from participating in any offering of a penny stock, including engaging in activities with a broker, dealer, or issuer for purposes of issuing, trading, or inducing or attempting to induce the purchase or sale of any penny stock, under Securities Act Section 20(g) [15 U.S.C. § 77t(g)] and Exchange Act Section 21(d)(6) [15 U.S.C. § 78u(d)(6)];

**VIII.**

Permanently prohibiting Defendants from participating, directly or indirectly, including, but not limited to, through any entity owned or controlled by either of them, in the issuance, purchase, offer, or sale of any security, provided, however, that such injunction shall not prevent Defendants

from purchasing or selling securities for their own personal accounts; and

## IX.

Granting any other and further relief this Court may deem just and proper.

## JURY DEMAND

The SEC demands a trial by jury.


Dated:  New York, New York
        August 27, 2024

_/s/  Antonia M. Apps_
ANTONIA M. APPS
REGIONAL DIRECTOR
Tejal D. Shah
Wendy B. Tepperman
Sushila Rao Pentapati
Eric C. Kirsch
Benjamin S. Mishkin
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
100 Pearl Street
Suite 20-100
New York, NY 10004-2616
(212) 336-0410 (Rao Pentapati)
pentapatisu@sec.gov
